339 S.E.2d 62 (1986)
RARITAN RIVER STEEL COMPANY
v.
CHERRY, BEKAERT & HOLLAND, a General Partnership; Gary J. Wolfe; S. Donald Blanton; Herman O. Coleman; C. Cline Comer; W. Douglas Serriss; Joe R. Nantz; Clarence Eugene Williams, Sr.; Preston Clark; Howard J. Kies; Harrace M. Rolnick; Peter A. Caprise; Jerry P. Fox; Eric C. Pressley; R. Turner Rivenbark; Wayne Comstock; Tony W. Warfford; Wit Brown; Louis Eddie Dutton; William Lanier, Jr.; David Whaley; T. Ernest Sievelkorn; James Laney; Harold B. Henderson; Albry Shaw; J. Arley Rowe, Jr.; William Blankenship; Robert Holman; Don Holland; Anthony G. Campas; John Compton; Donald Leonard; Michael Newhouse; Charles Weathersby; Wallace Permenter; Clyde Fussell; Wayne Busey; Jerry Lloyd; David Bolton; John Cordell; Ralph Davis; Harry Stolte, Jr.; Charles Brown; Wayne Grier; Harry Griggs, Jr.; Ralph Harold; Frances Koger; Kenneth Litton, Jr.; Charles Young; Bobby Black; William Flurry; Jack Moody; Rudolph Ohme, Jr.; E.A. Thomas, Jr.; Raymond Warco; E.C. Blackburn; Anthony Morris; W.H. Peterson; J. Dominquez; Robert Harter; Lloyd Brammer; Henry Colbreth; Patrick Callen; W.H. Huff; Jeffrey McClanathan; Richard Roberts; Wilburn Robertson; George Tornwall; and Robert White, partners. and
SIDBEC-DOSCO, INC.,
v.
CHERRY, BEKAERT & HOLLAND, a General Partnership; Gary J. Wolfe; S. Donald Blanton; Herman O. Coleman; C. Cline Comer; W. Douglas Serriss; Joe R. Nantz; Clarence Eugene Williams, Sr.; Preston Clark; Howard J. Kies; Harrace M. Rolnick; Peter A. Caprise; Jerry P. Fox; Eric C. Pressley; R. Turner Rivenbark; Wayne Comstock; Tony W. Warfford; Wit Brown; Louis Eddie Dutton; William Lanier, Jr.; David Whaley; T. Ernest Sievelkorn; James Laney; Harold B. Henderson; Albry Shaw; J. Arley Rowe, Jr.; William Blankenship; Robert Holman; Don Holland; Anthony G. Campas; John Compton; Donald Leonard; Michael Newhouse; Charles Weathersby; Wallace Permenter; Clyde Fussell; Wayne Busey; Jerry Lloyd; David Bolton; John Cordell; Ralph Davis; Harry Stolte, Jr.; Charles Brown; Wayne Grier; Harry Griggs, Jr.; Ralph Harold; Frances Koger; Kenneth Litton, Jr.; Charles Young; Bobby Black; William Flurry; Jack Moody; Rudolph Ohme, Jr.; E.A. Thomas, Jr.; Raymond Warco; E.C. Blackburn; Anthony Morris; W.H. Peterson; J. Dominquez; Robert Harter; Lloyd Brammer; Henry Colbreth; Patrick Callen; W.H. Huff; Jeffry McClanathan; Richard Roberts; Wilburn Robertson; George Tornwall; and Robert White, partners.
Nos. 8526SC811, 8526SC812.
Court of Appeals of North Carolina.
February 4, 1986.
*64 Grier and Grier by Joseph W. Grier, III, and Richard C. Belthoff, Jr., Charlotte, for plaintiff-appellant Raritan River Steel Co.
Golding, Crews, Meekins, Gordon & Gray by Rodney Dean, Charlotte, for plaintiff-appellant Sidbec-Dosco, Inc.
Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan by James G. Billings and Martha Jones Mason, Raleigh, for defendants-appellees.
WHICHARD, Judge.

I.
Plaintiffs appeal from the granting of defendants' motions to dismiss the complaints for failure to state claims upon which relief can be granted. N.C.Gen.Stat. 1A-1, Rule 12(b)(6). The issue is whether the complaints state claims based on third-party beneficiary contract doctrine and the tort doctrine of negligent misrepresentation. More particularly, we must decide whether a third person not in privity of contract with a certified public accountant has a claim against that accountant for negligent misrepresentation which allegedly results in loss to the third person.
We hold that plaintiff Raritan River Steel Company (Raritan) has stated claims based on both third-party beneficiary contract doctrine and negligent misrepresentation. We hold that plaintiff Sidbec-Dosco, Inc. (Sidbec) has stated a claim based on negligent misrepresentation but has not stated a claim based on third-party beneficiary contract doctrine. In particular, we hold that the law implies privity of contract for an alleged intended third-party beneficiary like Raritan and that such a plaintiff may bring an action in tort for negligent performance of the underlying contract. We also hold that under the facts alleged in Sidbec's complaint a third person not in privity of contract with a certified public accountant has a claim against that accountant for negligent misrepresentation.
Accordingly, we reverse the orders except for the portion dismissing Sidbec's third-party beneficiary claim, which we affirm.

II.
Raritan's complaint alleged, in pertinent part, that:
Intercontinental Metals Corporation (IMC) engaged defendant Cherry, Bekaert & Hollard (Cherry), a general partnership of certified public accountants, pursuant to a valid and enforceable contract, to provide an audit of IMC for the years ending 30 September 1980 and 30 September 1981. The individual defendants are all general partners in Cherry. Cherry published its audit on or about 30 January 1982. Cherry was negligent in the preparation of this audit in that the published report showed IMC with a net worth of approximately $7,000,000, when in actuality, IMC's net worth was substantially less. Dun & Bradstreet *65 published a report on IMC which made specific reference to Cherry's audit.
Raritan regularly supplied raw steel to IMC on credit. Relying on information in the Dun & Bradstreet report, which was supplied by defendant Cherry, Raritan extended credit to IMC in excess of $2,247,844. IMC is in bankruptcy and cannot pay this debt in any substantial amount. Accordingly, as a direct and proximate result of defendants' negligence, Raritan, relying on Cherry's audit, extended credit to IMC and consequently suffered losses in excess of $10,000.
In Raritan's second claim it alleged that it is a third-party beneficiary to IMC's contract with Cherry and may therefore recover damages resulting from Cherry's breach.
Sidbec's complaint contains essentially the same allegations as Raritan's. Sidbec also extended credit to IMC based on the Cherry audit. Sidbec, however, did not specifically allege that it relied on the Dun & Bradstreet report for its information. Rather, it simply alleged that it "has incurred... damages as a direct result of its extension of credit to IMC ... in reliance on [IMC's] reported financial condition...." Sidbec's damages resulted directly and proximately from Cherry's negligence in showing IMC with a net worth of approximately $7,000,000, when in actuality IMC's net worth was at least "a negative" $10,000,000.
Sidbec, like Raritan, alleged in its second claim that it is a third-party beneficiary of IMC's contract with Cherry.

III.
"`[A] complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff[s] [are] entitled to no relief under any state of facts which could be proved in support of the claim.'" Morrow v. Kings Department Stores, 57 N.C.App. 13, 16-17, 290 S.E.2d 732, 734, disc. rev. denied, 306 N.C. 385, 294 S.E.2d 210 (1982), quoting Sutton v. Duke, 277 N.C. 94, 103, 176 S.E.2d 161, 166. See also Brad Ragan, Inc. v. Callicut Enterprises, Inc., 73 N.C.App. 134, 135, 326 S.E.2d 62, 63 (1985). "`A claim for relief must still satisfy the requirements of the substantive laws which gave rise to the pleadings,'" however. Morrow, 57 N.C.App. at 17, 290 S.E.2d at 735. Specifically, plaintiffs must state enough to give the substantive elements of a legally recognized claim. Id.
Under the "notice theory" of pleading contemplated by Rule 8(a)(1), detailed fact-pleading is no longer required. A pleading complies with the rule if it gives sufficient notice of the events or transactions which produced the claim to enable the adverse party to understand the nature of it and the basis for it, to file a responsive pleading, andby using the rules provided for obtaining pretrial discoveryto get any additional information he may need to prepare for trial.
Sutton, 277 N.C. at 104, 176 S.E.2d at 167. "`[W]ell-pleaded material allegations of the complaint[s] are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted.'" Id. at 98, 176 S.E.2d at 163.

IV.
For claims based on third-party beneficiary contract doctrine to withstand a Rule 12 (b)(6) motion to dismiss, plaintiffs' allegations must show: "(1) the existence of a contract between two other persons; (2) that the contract was valid and enforceable; and (3) that the contract was entered into for his direct, and not incidental, benefit." Leasing Corp. v. Miller, 45 N.C.App. 400, 405-06, 263 S.E.2d 313, 317, disc. rev. denied, 300 N.C. 374, 267 S.E.2d 685 (1980); see also Brad Ragan Inc., 73 N.C.App. at 138, 326 S.E.2d at 65 (1985). Raritan alleges the existence of "a valid and enforceable contract" between defendants and IMC "entered into for the direct, and not incidental, benefit of plaintiff and other trade creditors." Since this includes all the allegations required by Leasing Corp., the complaint adequately states a claim based on third-party beneficiary contract doctrine. *66 The court thus erred in dismissing this portion of Raritan's complaint.
Sidbec alleges that defendant "pursuant to contracts, prepared audited financial statements for [IMC]." It then alleges that "[d]efendants' contract with IMC was entered into for the direct benefit of the [p]laintiff and other creditors...." This complaint fails to allege that the contract(s) between defendants and IMC were valid and enforceable. Hence, it omits the second of the "essential allegations" and thus "leaves to conjecture that which must be stated." Leasing Corp., 45 N.C.App. at 406, 263 S.E.2d at 317; see also Howell v. Fisher, 49 N.C.App. 488, 493, 272 S.E.2d 19, 23 (1980), disc. rev. denied, 302 N.C. 218, 277 S.E.2d 69 (1981).
Accordingly, we hold that Sidbec's complaint fails to state a claim based on third-party beneficiary contract doctrine. The court thus properly dismissed this portion of Sidbec's complaint. Upon remand Sidbec may move to vacate this portion of the Rule 12(b)(6) order and seek leave to amend its complaint to assert the essential allegation which it omitted. If it does, the trial court must then determine whether "justice ... requires" allowing the motion and granting the leave. N.C.Gen.Stat. 1A-1, Rule 15(a).

V.
We hold that both complaints adequately state a claim in tort for negligent misrepresentation. However, because Raritan has successfully alleged a claim based on third-party beneficiary contract doctrine, and Sidbec has not, different grounds exist for upholding each complaint.
As held above, Raritan has adequately alleged that it is a third-party beneficiary of defendants' contract with IMC. "[W]here a contract between two parties is entered into for the benefit of a third party, the latter may maintain an action ... in tort if he has been injured as a result of its negligent performance." Johnson v. Wall, 38 N.C.App. 406, 410, 248 S.E.2d 571, 573-74 (1978). The law implies privity of contract for intended third-party beneficiaries. Id. Thus, privity between Raritan and defendants is implied, and Raritan, as a third-party beneficiary, may bring an action in tort for injuries arising from defendants' negligent performance of their contract with IMC.
Since Sidbec failed to state a claim based on third-party beneficiary doctrine, however, it must seek recovery in tort as a third person not in privity of contract with defendant. See Leasing Corp., 45 N.C. App. at 406, 263 S.E.2d at 317; Howell, 49 N.C.App. at 493-95, 272 S.E.2d at 23-24. More specifically, the issue is whether a third person not in privity with a certified public accountant may bring a claim against that accountant for negligent misrepresentation concerning the preparation of an audit opinion which the third person allegedly relied on to his or her detriment.
A majority of jurisdictions have held that lack of privity bars a negligent misrepresentation action against an accountant. See Note, Negligent Misrepresentation and the Certified Public Accountant: An Overview of Common Law Liability to Third Parties, 18 Suffolk L.Rev. 431, 432 (1984). However, "the judicial trend is toward an abrogation of the privity requirement in favor of a more flexible and equitable standard." Id. Justice Cardozo's decision in Ultramares Corp. v. Touche, 255 N.Y. 170, 174 N.E. 441 (1931) first established the privity requirement. The Court there declined to impose on an accountant liability to a third party for negligent preparation of a balance sheet. It held that privity or a bond so close as to approach privity is necessary to impose liability on public accountants. 255 N.Y. at 182-83, 174 N.E. at 445-46. It warned:
If liability for negligence exists, a thoughtless slip or blunder, the failure to detect a theft or forgery beneath the cover of deceptive entries, may expose accountants to a liability in an indeterminate amount for an indeterminate time to an indeterminate class. The hazards of a business conducted on these terms are so extreme as to enkindle doubt *67 whether a flaw may not exist in the implication of a duty that exposes to these consequences.
Id. at 179-80, 174 N.E. at 444.
This Court, however, has stated that "[t]he rationale of Ultramares is not ... controlling where the damages to an identified third party are reasonably foreseeable by the defendant." Howell, 49 N.C.App. at 495, 272 S.E.2d at 24. Following that reasoning, it held that plaintiff shareholders had a claim against defendant engineers for negligent misrepresentation concerning a soil report prepared by defendants for plaintiff shareholders' corporation, despite the absence of privity between plaintiffs and defendants. Id. at 495-98, 272 S.E.2d at 24-26.
"It is well settled in North Carolina that privity of contract is not required in order to recover against a person who negligently performs service for another and thus injures a third party." Ingle v. Allen, 71 N.C.App. 20, 26, 321 S.E.2d 588, 594 (1984), disc. rev. denied, 313 N.C. 508, 329 S.E.2d 391 (1985). In particular, under certain circumstances a third person not in privity of contract with an attorney may recover for negligence in the performance of the attorney's employment contract with his or her client. See, e.g., Leasing Corp., 45 N.C.App. at 406-07, 263 S.E.2d at 317-18. In Leasing Corp. the Court held that plaintiff, a lessor of equipment to defendant attorneys' client, adequately stated a claim against defendants for negligence concerning a title opinion letter issued by defendants to their client and relied on by plaintiff.
We find no compelling basis for distinguishing accountants from other professionals in this regard. Following Leasing Corp. and Howell, we thus hold that lack of privity of contract is not a bar to actions by third parties against certified public accountants for negligent misrepresentation.
Jurisdictions which have abandoned the privity requirement have adopted several standards for determining accountants' liability in tort. The most commonly applied alternative to the privity rule is that in the Restatement (Second) of Torts Sec. 552 (1977). See Negligent Misrepresentation, 18 Suffolk L.Rev. at 439-40. It provides that:
(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in theri business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or know that the recipient intends to supply it; and
(b) Through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
Restatement (Second) of Torts Sec. 552 (1977).
This Court has followed the Restatement approach to negligent misrepresentation actions by third parties not in privity in suits against engineers (Howell, supra; Davidson and Jones, Inc. v. County of New Hanover, 41 N.C.App. 661, 255 S.E.2d 580, disc. rev. denied, 298 N.C. 295, 259 S.E.2d 911 (1979)) and real estate appraisers (Alva v. Cloninger, 51 N.C.App. 602, 277 S.E.2d 535 (1981)). As construed in Howell, the Restatement restricts actions to a plaintiff or limited group of plaintiffs "to whom defendant intended the information to be supplied, who have suffered a loss in reliance upon the information in a transaction which defendant intended the information to influence." Howell, 49 N.C. App. at 497, 272 S.E.2d at 25. Accordingly, in Howell plaintiffs established a claim for relief under this test by alleging "that defendants prepared the soil test reports with *68 express knowledge that they would be used to induce plaintiffs to invest in the corporation and defendants' agent so advised plaitiffs upon the reliability of the soil reports." Id.
Another standard is a balancing test containing several factors. This standard originates with Biakanja v. Irving, 49 Cal.2d 647, 320 P.2d 16 (1958). In Biakanja a will was denied probate because the notary public who prepared it negligently failed to have it attested. Plaintiff, a beneficiary under the will, sought damages from the notary public. The Court held that third-party liability was a policy matter and applied the following six-factor balancing test:
[t]he extent to which the transaction was intended to affect the plaintiff; the foreseeability of harm to [plaintiff], the degree of certainty that the plaintiff suffered injury, the [proximity] between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm.
Id. at 650, 320 P.2d at 19.
In Aluma Kraft Manufacturing Co. v. Elmer Fox & Co., 493 S.W.2d 378 (Mo.App. 1973), the court applied the Biakanja test to accountants. Plaintiff there, a buyer of stock of defendant accounting firms' client, sought damages for negligence in the performance of an audit it detrimentally relied on in the stock purchase. Applying the Biakanja test, the Court held that plaintiff had stated a claim sufficient to withstand defendants' motion to dismiss. Id. at 383.
This Court has acknowledged or applied the Biakanja test to find a third-party claim against architects. Condominium Assoc. v. Scholz Co., 47 N.C.App. 518, 268 S.E.2d 12, disc. rev. denied, 301 N.C. 527, 273 S.E.2d 454 (1980); Industries Inc. v. Construction Co., 42 N.C.App. 259, 257 S.E.2d 50, disc. rev. denied, 298 N.C. 296, 259 S.E.2d 301-02 (1979). It has also applied this test to find a third-party claim against attorneys. Ingle v. Allen, 71 N.C. App. 20, 321 S.E.2d 588 (1984); Jenkins v. Wheeler, 69 N.C.App. 140, 316 S.E.2d 354, disc. rev. denied, 311 N.C. 758, 321 S.E.2d 136 (1984); Leasing Corp., supra.
Two jurisdictions have adopted a standard negligence theory of recovery known as the reasonably foreseeable test. Under this theory, accountants owe a duty of care to all parties who are reasonably foreseeable recipients of financial statements for business purposes, provided the recipients rely on the statements pursuant to those business purposes. Rosenblum v. Adler, 93 N.J. 324, 352, 461 A.2d 138, 153 (1983); see also Citizens State Bank v. Timm, Schmidt & Co., 113 Wis.2d 376, 386, 335 N.W.2d 361, 366 (1983). In Rosenblum a corporate plaintiff acquired the stock of defendant accounting firm's client. When the stock later proved worthless, plaintiff sued defendants alleging negligence and detrimental reliance. Applying the reasonably foreseeable test, the Court found defendants liable for negligent misrepresentation. 93 N.J. at 353-58, 461 A.2d at 153-56.
The courts of this jurisdiction have not applied the reasonably foreseeable test to find liability to third parties in any negligent misrepresentation action. We also decline here to apply it to accountants. Especially in the field of accounting, "it [is] necessary to adopt a more restricted rule of liability [for pecuniary loss], because of the extent to which misinformation may be, and may be expected to be, circulated, and the magnitude of the losses which may follow from reliance upon it." Restatement (Second) of Torts 2d Sec. 552, comment a (1977).
We also do not adopt the Restatement test. The Restatement approach "is similar to the privity rule in that it draws an arbitrary limit on the class of potential plaintiffs." Negligent Misrepresentation, 18 Suffolk L.Rev. at 445. "While the Restatement position is easily applied, its arbitrary limitations create an undesirable inflexibility which denies injured third parties recovery simply because they do not fall within a specific class of persons." Id. at 445-46; see also Restatement (Second) of Torts Sec. 552, comment h, illustrations 5-7 *69 (1977). In essence, liability hinges on the purpose of a particular audit. Besser, Privity ?An Obsolete Approach to the Liability of Accountants to Third Parties, 7 Seton Hall L.Rev. 507, 527 (1976). While the purpose of a particular audit may be relevant to foreseeability, it should not be exclusively determinative. Id.
The Biakanja test, by contrast, avoids the necessity of an arbitrary, purpose-based determination of liability by allowing a court to weigh the purpose of the audit as one of several determinative factors. As noted, this Court has applied this test to find third-party liability for professionals in law and architecture. We now adopt it for determining professional accountants' liability to third parties as well.
Taking the allegations in Sidbec's complaint "as admitted," Sutton, 277 N.C. at 98, 176 S.E.2d at 163, and balancing the Biakanja factors, we hold that Sidbec has stated a claim against defendants for negligent misrepresentation. Accordingly, the court erred in dismissing this portion of Sidbec's complaint.
The first consideration is the extent to which the transaction was intended to affect the plaintiff. In Leasing Corp. "[t]he furnishing of title opinion was done for the express purpose of inducing plaintiff to lease ... equipment" from defendant attorneys' client. Leasing Corp., 45 N.C.App. at 407, 263 S.E.2d at 318. Sidbec's complaint, however, does not show that the furnishing of defendants' audit was for the express purpose of inducing plaintiff to extend credit to IMC. Sidbec merely alleges that "[d]efendant[s] knew that such financial statements would be used for ... general representations by [IMC] of its financial condition, and that extensions of credit to IMC ... would be based upon such statements." In Aluma Kraft, supra, the Court upheld a complaint which alleged that defendant "knew its opinion would be utilized by the plaintiff, knew a purchase of the stock was contemplated, knew the purchase price was to be computed based upon the audit, and knew the audit would be furnished to the purchasers [plaintiff]." 493 S.W.2d at 383. That is not the case here. Sidbec's allegations do not show specifically that defendants were aware of Sidbec's intention to extend credit to IMC based on defendants' audit.
Sidbec also alleges, however, that "[d]efendant[s'] contract with IMC was entered into for the direct benefit of the [p]laintiff and other creditors who the [d]efendant[s] knew would be relying upon such information." This allegation arguably shows that defendants' audit "was directly intended to affect plaintiff." Leasing Corp., 45 N.C.App. at 407, 263 S.E.2d at 318. Balanced with the other Biakanja factors, this allegation prevents us from concluding "to a certainty that plaintiff[s] [are] entitled to no relief under any state of facts." Morrow, 57 N.C.App. at 16-17, 290 S.E.2d at 734. We thus hold that entry of the Rule 12(b)(6) order was improper.
In Leasing Corp. the Court found that "[i]t was foreseeable that failure to discover and to disclose prior recorded liens would result in an impairment of the plaintiff's security position in the pledged collateral." Leasing Corp., 45 N.C.App. at 407, 263 S.E.2d at 318. Likewise, it was foreseeable here that failure to discover and disclose that IMC had a substantial negative rather than positive net worth would harm creditors such as Sidbec who extended credit relying on defendants' audit. Taking the complaint as true, it is reasonably certain that Sidbec has suffered injury, since the complaint alleges that Sidbec "has incurred substantial expenses and damages as a direct result of its extentions of credit to IMC...." See Jenkins, 69 N.C.App. at 143-44, 316 S.E.2d at 357. No allegations suggest that there were any intervening circumstances between defendants' allegedly negligent conduct and Sidbec's loss. Id. Under these circumstances defendants owed a duty to Sidbec to use reasonable care in the performance of its contract or contracts with IMC.
At the evidentiary stage, Sidbec will have the burden of supporting its allegations. At the pleading stage, however, pursuant *70 to the authorities discussed above, the allegations are at least minimally sufficient to state a claim for relief.
In No. 8526SC811 (Raritan), reversed.
In No. 8526SC812 (Sidbec), affirmed in part, reversed in part.
JOHNSON and PHILLIPS, JJ., concur.