CAROLYN M. WRENN v. JESSE RANDALL BYRD, M.D.

No. COA95-83

(Filed 21 November 1995)

## 1. Negligence § 75 (NCI4th)— plaintiff's chronic depression—sufficiency of evidence

In an action to recover for negligent infliction of emotional distress, the evidence was sufficient to show that plaintiff suffered from severe emotional distress where a doctor testified that she suffered from moderate depression, and the depression had spanned three years and was thus chronic.

**Am Jur 2d, Negligence § 81.**

## 2. Negligence § 19 (NCI4th)— plaintiff's distress reasonably foreseeable—sufficiency of evidence

In an action to recover for negligent infliction of emotional distress, the distress suffered by plaintiff was reasonably foreseeable where plaintiff personally observed the negligent act of defendant in misdiagnosing the malady of plaintiff's husband, defendant was aware that plaintiff and his patient were married, and plaintiff was present with her husband after the negligent act and observed first hand the disabling effects of the negligence; furthermore, there was no merit to defendant's argument that summary judgment must be sustained because there was no evidence that defendant knew that plaintiff was subject to an emotional or mental condition as a result of his negligence.

**Am Jur 2d, Negligence §§ 488 et seq.**

Appeal by plaintiff from order filed 11 October 1994 in Durham County Superior Court by Judge Henry V. Barnette, Jr. Heard in the Court of Appeals 24 October 1995.

*Bentley & Kilzer, P.A., by Charles A. Bentley, Jr. and Susan B. Kilzer, for plaintiff-appellant.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Samuel G. Thompson, John D. Madden, and James Y. Kerr, II, for defendant-appellee.*

GREENE, Judge.

Carolyn M. Wrenn (plaintiff) appeals from the trial court's 11 October 1994 order which granted summary judgment for Jesse Randall Byrd, M.D. (defendant) on plaintiff's negligent infliction of emotional distress claim. Defendant cross-assigns error to the trial court's denial of his motion to exclude plaintiff's expert testimony regarding her severe emotional distress.

On 4 September 1989, George T. Wrenn (Wrenn) became ill and was taken by plaintiff, his wife of twenty-four years, to the emergency room at the Maria Parham Hospital (Hospital) in Vance County, North Carolina. Wrenn was seen by defendant, a doctor at the Hospital, who diagnosed him with gastroenteritis and released Wrenn. Approximately fourteen hours later, Wrenn developed black spots on his body and plaintiff again took him to the Hospital. Wrenn saw another doctor on this occasion who stated that his symptoms were of septic shock and after administering treatment had Wrenn transported to Duke, where he had most of both feet and one finger amputated because of the progressive stage of the infection.

Plaintiff and Wrenn sued the Hospital, its owner and defendant. At the time of this appeal, all claims, except plaintiff's negligent infliction of emotional distress claim against defendant, which is now before us, have been voluntarily dismissed without prejudice. In her claim for relief, plaintiff alleges that defendant was negligent in his treatment of Wrenn, which caused plaintiff to suffer "great emotional distress, mental anguish and anxiety" which was foreseeable by defendant.

Defendant moved for summary judgment on plaintiff's negligent infliction of emotional distress claim on 24 September 1994 and argued that the discovery reveals that plaintiff cannot present evi-

dence that she suffered severe emotional distress or that such distress was foreseeable by defendant. The evidence at the summary judgment hearing, viewed in the light most favorable to plaintiff, *see Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 101 N.C. App. 1, 4, 398 S.E.2d 889, 890 (1990) (on summary judgment must view evidence in light most favorable to plaintiff), *rev'd on other grounds*, 329 N.C. 646, 407 S.E.2d 178 (1991), reveals other than leaving Wrenn's side to call her pastor and to greet him when he arrived, plaintiff was with Wrenn the entire time he was in the emergency room, being treated by defendant. Defendant asked plaintiff questions about Wrenn and gave her instructions regarding his care. Defendant knew that plaintiff was Wrenn's wife. After leaving the emergency room and following defendant's advice, plaintiff watched Wrenn's condition deteriorate, over the next fourteen hours, to the point that she had to take him back to the Hospital. Upon their second visit to the emergency room, Wrenn had to lie in the back of the car and had to be taken into the Hospital in a wheelchair. After Wrenn was diagnosed in the Hospital, he was flown to Duke University Hospital (Duke) via Life Flight, and plaintiff was driven there by her pastor and his wife. Wrenn was a patient at Duke for three weeks on one occasion and after about one week at home, again a patient at Duke for about six weeks. While there he "underwent extensive treatment, including surgical procedures of amputations of portions of both feet and one of his fingers." During Wrenn's hospitalization at Duke, plaintiff would drive to work in another town every day and return to Duke to stay with Wrenn at night. On her trips to and from work, plaintiff "cr[ied] a lot." During his recuperation from his amputations, plaintiff bathed Wrenn, brought him the bedpan, helped him into a wheelchair and wheeled him around and had people come and sit with him while she was at work.

Because Wrenn has been unable to do things at home since his recuperation, plaintiff has also taken over those responsibilities. Wrenn cannot garden and often does not eat in the kitchen, because it is difficult for Wrenn to walk on a hard surface. It is undisputed that Wrenn has suffered "skin breakdowns" at the points of amputation and that he has been unable to work in the business that he maintained prior to the amputations. Based upon a 1992 evaluation of plaintiff, Dr. Anthony D. Sciara (Sciara) opined that plaintiff is "somewhat depressed at the changes that [have] happened in their life. . . . It's not a severe depression, but it's moderate." Plaintiff also testified that the entire ordeal has been a nightmare and that she has cried

many times since the 4 September 1989 incident, because of the ordeal with which Wrenn has been presented.

Prior to the summary judgment motion, defendant made a motion to compel Sciara to provide certain financial information, because Sciara refused to provide the information when requested by defendant to do so during Sciara's deposition. The trial court granted defendant's motion to compel and provided that "Sciara shall not be permitted to testify at the trial of this matter," unless the information is provided to "the judge presiding at the trial of this action." Because defendant had not received this information prior to the summary judgment hearing, he requested that the court exclude Sciara's deposition testimony at the summary judgment hearing. The trial court denied defendant's motion.

Based upon the evidence, including Sciara's testimony, the trial court determined that there was no evidence in the record that plaintiff had suffered severe emotional distress and thus plaintiff could not establish a material element of her claim and granted defendant's summary judgment motion.

---

The issues are (I) whether there is substantial evidence that (A) plaintiff suffers from "severe emotional distress," and if so, (B) that it was foreseeable by defendant that the plaintiff would experience this distress as a result of his negligent conduct; and (II) whether the trial court correctly denied defendant's motion to exclude Dr. Sciara's testimony.

·I

In North Carolina a person who sustains severe emotional distress arising from concern for another person may recover damages from a defendant if "they can prove they 'suffered such severe emotional distress as a proximate and foreseeable result of the defendant's negligence.'" *Hickman v. McKoin*, 337 N.C. 460, 462, 446 S.E.2d 80, 82 (1994) (*quoting Sorrells v. M.Y.B. Hospitality Ventures of Asheville*, 334 N.C. 669, 672, 435 S.E.2d 320, 321 (1993)). "[N]either a physical impact, a physical injury, nor a subsequent physical manifestation of emotional distress is an element of the tort [known as] negligent infliction of emotional distress." *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 304, 395 S.E.2d 85, 97, *reh'g denied*, 327 N.C. 644, 399 S.E.2d 133 (1990). Severe emotional distress is defined to mean "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and

disabling emotional or mental condition which may be generally rec-
ognized and diagnosed by professionals trained to do so." *Id.* "[M]ere
temporary fright, disappointment or regret" does not constitute
severe emotional distress. *Id.* Although the question of foreseeability
is generally for the jury, the trial judge is required to dismiss the claim
as a matter of law upon a determination that the injury is too remote.
*Id.* at 305, 395 S.E.2d at 98 (foreseeability must be determined on a
"case-by-case basis by the trial court, and where appropriate, by a
jury"); *Sorrells v. M.Y.B Hospitality Ventures of Asheville*, 108 N.C.
App 668, 671-72, 424 S.E.2d 676, 679, *rev'd on other grounds*, 334 N.C.
669, 435 S.E.2d 320 (1993). Factors to be considered by the judge or
the jury in making the foreseeability determination "include, *but are
not limited to*: (1) 'the plaintiff's proximity to the negligent act' caus-
ing injury to the other person, (2) 'the relationship between the plain-
tiff and the other person,' and (3) 'whether the plaintiff personally
observed the negligent act.' " *Sorrells v. M.Y.B. Hospitality Ventures
of Asheville*, 334 N.C. 669, 672, 435 S.E.2d 320, 322 (1993) (emphasis
in original); *see Sorrells*, 108 N.C. App. at 671-72, 424 S.E.2d at 679
(listing other factors appropriately considered by the judge).

## A

**[1]** The defendant first contends that the evidence does not show
that plaintiff has sustained severe emotional distress. We disagree.
Sciara testified that plaintiff suffers from "moderate depression."
Although he does not state that the depression is chronic, chronic
depression by definition is depression "[o]f long duration." *Taber's
Cyclopedic Medical Dictionary* 355 (16th ed. 1989). Therefore, the
evidence can support a finding that the depression occurred as a con-
sequence of the injuries to her husband three years prior to her diag-
nosis and is chronic because it has extended over the entire three
years. *See Dettor v. BHI Property Co.*, 324 N.C. 518, 522, 379 S.E.2d
851, 853 (1989) (summary judgment inappropriate where reasonable
minds might differ as to the import of evidence); *see also Sloan v.
Miller Bldg. Corp.*, 119 N.C. App. 162, 165-66, 458 S.E.2d 30, 32 (sum-
mary judgment inappropriate where reasonable jurors could differ),
*disc. rev. denied*, 341 N.C. App. 652, 462 S.E.2d 517 (1995). Because
chronic depression is specifically enumerated as a mental condition
which equates to severe emotional distress, the evidence cannot sup-
port entry of summary judgment for the defendant on this basis.
Furthermore, because the evidence supports a finding that the
depression is chronic, it is not material that the depression is classi-
fied as "moderate." There is no requirement that chronic depression

be severe in order to qualify as severe emotional distress under the *Ruark* definition.

In so holding we reject the defendant's argument that even if we determine that the evidence could support a finding of chronic depression, that summary judgment was proper because there is no evidence that the depression was disabling. Proof that a person suffers from neurosis, psychosis, chronic depression or phobia is sufficient to show severe emotional distress, without an additional showing that the disorders are also disabling. It is incorrect to read the second part of the severe emotional distress definition as qualifying the first part. *Cf. Davis v. Granite Corp.*, 259 N.C. 672, 675, 131 S.E.2d 335, 337 (1963) (disjunctive term "or" creates two separate clauses).

B

[2] Defendant next argues that summary judgment can be supported on the basis that the distress suffered by plaintiff was not reasonably foreseeable. We disagree.

The plaintiff, who is the wife of Wrenn, personally observed the negligent act of the defendant[1] and did so in the very room where the negligent diagnosis occurred. The defendant was aware that the plaintiff and Wrenn were married. Additionally, the plaintiff was present with Wrenn after the negligent act and observed first hand the disabling effects of the negligence. This evidence requires that the issue of foreseeability be submitted to the jury. *See Willis v. Duke Power Co.*, 42 N.C. App 582, 591, 257 S.E.2d 471, 477 (1979) (where reasonable persons could differ summary judgment improper).

In so holding we reject the defendant's argument that summary judgment must be sustained because there is no evidence that the defendant knew that the plaintiff was subject to an emotional or mental condition as a result of his negligence. We are aware that our Supreme Court has used language which appears to suggest that absent evidence of the defendant's knowledge of the plaintiff's emotional or mental condition, the plaintiff cannot recover for negligent infliction of emotional distress. *Gardner v. Gardner*, 334 N.C. 662, 667, 435 S.E.2d 324, 328 (1993); *Butz v. Holder*, 113 N.C. App. 156, 159, 437 S.E.2d 672, 674 (1993) (it "appears" that the *Gardner* Court requires forecast of evidence that defendant knew that plaintiff was

---

1. For the purposes of this appeal, the defendant does not dispute his negligence.

**WRENN v. BYRD**

[120 N.C. App. 761 (1995)]

subject to emotional distress). To construe *Gardner* in the manner contended by the defendant would effectively abolish the tort of negligent infliction of emotional distress, as all claims against strangers would be precluded. The only claims permitted would be those against a defendant who knows the plaintiff. A more reasonable construction can be placed on the *Gardner* opinion if read in the context of the general rule of law that provides

> if the defendant's act would not have resulted in any injury to an ordinary person, he is not liable for its harmful consequences to one of peculiar susceptibility, except insofar as he was on notice of the existence of such susceptibility, but if his misconduct amounted to a breach of duty to a person of ordinary susceptibility, he is liable for all damages suffered by plaintiff notwithstanding the fact that these damages were unusually extensive because of peculiar susceptibility.

*Lockwood v. McCaskill*, 262 N.C. 663, 670, 138 S.E.2d 541, 546 (1964). In this context, proof of knowledge by the defendant of the plaintiff's peculiar susceptibility to emotional distress is required *only* if the conduct of the defendant would not have caused injury to an ordinary person. This construction of *Gardner* is consistent with other opinions from the Supreme Court addressing this tort, which have not included, as an element of foreseeability in every case, the defendant's knowledge of plaintiff's peculiar susceptibility to emotional distress. *Hickman*, 337 N.C. 460, 446 S.E.2d 80; *Ruark Obstetrics*, 327 N.C. at 305-06, 395 S.E.2d at 98; *Sorrells*, 334 N.C. at 672-73, 435 S.E.2d at 322; *Andersen v. Baccus*, 335 N.C. 526, 532, 439 S.E.2d 136, 139 (1994) (not forseeable because "plaintiff was not in close proximity to" and did not observe negligent act).

In this case, the defendant makes no argument that the injuries allegedly sustained by the plaintiff would not have been sustained by a person of ordinary susceptibilities or that the plaintiff was a person who was peculiarly susceptible to emotional distress. Indeed the record would not support such arguments. Thus, there is no requirement that the plaintiff, in this summary judgment proceeding, show that defendant had knowledge of her susceptibility to emotional distress.

## II

Defendant alternatively argues that the trial court erred by not excluding Sciara's testimony from its determination of summary judg-

ZANONE v. RJR NABISCO

[120 N.C. App. 768 (1995)]

ment, because the plaintiff failed to comply with the trial court's order to produce certain documents relating to Sciara's testimony. It follows, the defendant contends, that without Sciara's testimony the plaintiff cannot prove her case with regard to severe emotional distress. The trial court's denial to issue sanctions, however, is within its sound discretion, and defendant has not argued nor is there evidence that the trial court abused its discretion in this case. *Brooks v. Giesey*, 106 N.C. App. 586, 592, 418 S.E.2d 236, 239 (1992), *aff'd*, 334 N.C. 303, 432 S.E.2d 339 (1993). Moreover, the specific sanction provided in the discovery order was that if plaintiff does not comply with the order "Sciara shall not be permitted to testify at the trial of this matter." The deposition testimony used in the summary judgment determination is not the same as "testif[ing] at . . . trial."

Reversed.

Judges MARTIN, Mark D., and McGEE concur.