ALTON RAY MOZINGO, JR., BY HIS GUARDIAN AD LITEM, ALLEN G. THOMAS; AND ALTON RAY MOZINGO v. PITT COUNTY MEMORIAL HOSPITAL, INC., MELINDA WARREN, RICHARD JOHN KAZIOR

No. 903SC438

(Filed 19 February 1991)

1. **Appeal and Error § 329 (NCI4th); Rules of Civil Procedure § 56.3 (NCI3d) — malpractice action — contract between medical school and doctor's employer — consideration by court on appeal proper**

There was no merit to plaintiffs' argument that the court on appeal should not consider the terms of the contract between East Carolina Medical School and defendant doctor's employer because the contract was not made a part of the record on appeal and because the defendant had no knowledge of the terms of the contract since the terms of the contract were a part of the record because defendant testified to them in an affidavit which was made a part of the record, and there were no timely objections to defendant's affidavit on the ground of a lack of personal knowledge or upon the possible ground that the defendant's affidavit violated the best evidence rule.

**Am Jur 2d, Appeal and Error §§ 429, 528.**

2. **Physicians, Surgeons, and Allied Professions § 11 (NCI3d) — malpractice action — no physician-patient relationship — consensual relationship requirement not waived**

In an action to recover for medical malpractice where plaintiff alleged that defendant was negligent in his care and case management of plaintiff's wife's labor and delivery, plaintiff failed to show a physician-patient relationship from which a duty of care arose where the evidence tended to show that defendant was employed by a company to provide supervision for residents in the East Carolina Medical School; defendant, plaintiff, and plaintiff's wife had no contact prior to delivery of the minor plaintiff; the only contact they had took place after any negligence was alleged to have occurred; and the circumstances of this case were not such that the consensual

MOZINGO v. PITT COUNTY MEMORIAL HOSPITAL

[101 N.C. App. 578 (1991)]

relationship requirement was deemed to have been waived by defendant.

**Am Jur 2d, Physicians, Surgeons, and Other Healers § 158.**

3. **Physicians, Surgeons, and Allied Professions § 11 (NCI3d) — malpractice action — consensual physician-patient relationship absent — duty of defendant doctor to injured plaintiff**

Defendant doctor failed to prove that he did not owe a duty of care to the minor plaintiff in the absence of a consensual physician-patient relationship where the evidence tended to show that defendant was responsible for the supervision of the residents in the hospital where the minor plaintiff was born; he had undertaken a responsibility as an employee of a private medical practice group to render supervisory medical services to the Medical School's residency program and thereby to the residents training under it and, at least indirectly, to the patients under the residents' care; such supervision was necessary for the protection of patients receiving care under the Medical School's residency program; defendant was in such a position that if a person of "ordinary sense" were to think about the circumstances, the person would at once recognize that if the defendant were to fail to use the amount of care required of him for the proper supervision of the residents, he would cause danger of injury to the patients under the care of the residents; and although the imposition of a duty upon physicians such as the defendant may have negative consequences for the community, these potential consequences do not outweigh the policy of preventing harm to patients arising from supervision of residents by physicians like defendant.

**Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 286, 299.**

4. **Physicians, Surgeons, and Allied Professions § 17 (NCI3d) — malpractice — failure to show standard of care — failure to demonstrate standard not breached**

In a medical malpractice action defendant failed to demonstrate the applicable standard of care owed to the minor plaintiff and failed to demonstrate that defendant did not breach that standard, though defendant offered affidavits of doctors

who averred that they were familiar with standards for supervision of interns and residents at three hospitals other than the one in which the alleged injury occurred, but none of the doctors averred that they were familiar with the standards of practice among members of the same health care profession with similar training and experience to that of the defendant situated in Pitt County or a similar community at the time of the alleged negligence giving rise to this suit; furthermore, while defendant averred that he acted according to his contractual duty with his employer, none of the affiants averred that defendant acted in accordance with the appropriate standard of care.

**Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 354, 356.**

**Malpractice testimony: Competency of physician or surgeon from one locality to testify, in malpractice case, as to standard of care required of defendant practicing in another locality. 37 ALR3d 420.**

Judge ORR dissenting.

APPEAL by plaintiffs from order filed 27 March 1990 in PITT County Superior Court by *Judge William C. Griffin, Jr.* Heard in the Court of Appeals 28 November 1990.

*Narron, Holdford, Babb, Harrison & Rhodes, P.A., by William H. Holdford and Elizabeth B. McKinney, for plaintiff-appellants.*

*Young, Moore, Henderson & Alvis, P.A., by Jerry S. Alvis, for defendant-appellee Kazior.*

GREENE, Judge.

The plaintiffs appeal the trial court's order filed 27 March 1990 granting the defendant's motion for summary judgment.

Viewed in the light most favorable to the plaintiffs, Alton Ray Mozingo, Jr. [Mozingo, Jr.] and his father, the evidence tends to show the following: At some time before 2:00 p.m. on 5 December 1984, Sandra Dee Mozingo [Mozingo] was admitted to Pitt County Memorial Hospital [Hospital] for the delivery of her second child, Mozingo, Jr. She received medical care from the residents and

MOZINGO v. PITT COUNTY MEMORIAL HOSPITAL

[101 N.C. App. 578 (1991)]

nurses at the Hospital. At the time of her admission Mozingo did not have a private physician.

The Hospital was the teaching hospital for the East Carolina University Medical School [Medical School]. The residents who rendered care to Mozingo were licensed physicians undergoing post-graduate specialty training in obstetrics at the Hospital under the Medical School's residency program. This residency program at the Hospital under which the residents trained was conducted by the Medical School. To provide supervision for the residents, the Medical School contracted with Eastern OB/GYN Associates [Eastern], a private medical practice group in Greenville, North Carolina. Under their contract, Eastern agreed to provide its own physicians for "on call" supervision of the residents training under the residency program. The contract stated that Eastern's employee-physicians could provide supervision by remaining at home during "on call" hours so long as the physicians were immediately available by telephone to respond to the chief resident's requests for assist-ance regarding obstetric patients admitted to the Hospital. Eastern and the Medical School entered into this contract before Eastern hired Dr. Richard Kazior [defendant] as one of its physicians.

On 5 December 1984, the defendant was a physician employed by Eastern. While the defendant had unrestricted privileges at the Hospital as a "staff physician," he was not employed by either the Hospital or the Medical School. As one of Eastern's physi-cians, the defendant supervised residents at the Hospital pursuant to Eastern's contract with the Medical School. At 5:00 p.m. on 5 December 1984, the defendant came "on call." By stipulation, the defendant admitted that "he was the Attending Physician on Call for the OB/GYN Service of Pitt County Memorial Hospital with the responsibility for supervision of the OB/GYN residents and interns at the time of the birth of Alton Ray Mozingo, Jr."

After coming "on call," the defendant remained at his home with an open telephone line. The defendant lived approximately two miles from the Hospital. At some time in the early evening, the residents providing care to Mozingo began experiencing dif-ficulties in Mozingo's delivery. One of the residents, Dr. Melinda Warren, telephoned the defendant and informed him that they had encountered a birthing problem called shoulder dystocia. Ac-cording to the defendant, a shoulder dystocia occurs when "a shoulder of the infant in process of delivery becomes wedged or stuck in

the pelvic cavity and constitutes an obstacle to the completion of the delivery." Upon receiving the call, the defendant immediately went to the Hospital. However, by the time he arrived, Mozingo had completed her delivery. The defendant's first contact of any kind with Mozingo and the plaintiffs occurred after the delivery. The defendant talked to the Mozingos, observed Mozingo, Jr., and ordered a hemoglobin A one C. The defendant never billed Mozingo or the plaintiffs for any services. The record is silent as to whether Eastern ever billed Mozingo or the plaintiffs for any services.

According to the plaintiffs' expert, Dr. William Dillon, Mozingo "was a known gestational diabetic with extreme obesity and no established estimated fetal weight notwithstanding sonography. As such, there was a known significant risk of a macrosomic baby [a very large baby, weighing over 4,000 grams at birth]. Therefore, there were very significant known risk factors for this pregnancy which included a known significant risk factor of shoulder dystocia." As stated previously, the residents encountered a shoulder dystocia in Mozingo's delivery. Dr. Dillon testified that "this was an extremely severe shoulder dystocia," and that as a result of it, Mozingo, Jr. was born with many disabilities, including but not limited to Erb's palsy and phrenic nerve paralysis.

On 3 December 1987, the plaintiffs filed a complaint against the defendant alleging that the defendant's medical malpractice caused the damages suffered by Mozingo, Jr. See Bolkhir v. North Carolina State Univ., 321 N.C. 706, 713, 365 S.E.2d 898, 902 (1988) (when unemancipated minor is injured by another's negligence, parent has claim for loss of child's services during minority and for medical expenses reasonably necessary to treat minor's injuries). More particularly, the plaintiffs allege that the defendant "was negligent in that he deviated from the legally acceptable standards of practice in his lack of supervision of Defendant Melinda Warren and in that his care and case management of Mrs. Mozingo's labor and delivery failed to meet legally acceptable standards of practice." The defendant answered the complaint and filed a motion for summary judgment on 6 October 1989 supported by four affidavits, the pleadings, and other material obtained during discovery. The plaintiffs responded with a sworn affidavit and the transcript of Dr. Dillon's deposition. The trial court granted summary judgment for the defendant on 29 December 1989 and the plaintiffs filed a notice of appeal. However, the trial court later rescinded its prior order, received into evidence the defendant's stipulation dis-

cussed above, and granted summary judgment in favor of the defendant, which judgment was filed 27 March 1990.

---

The issues are (I) whether the defendant met his burden of proving that he did not owe Mozingo, Jr. a duty of care (A) arising from a physician-patient relationship or (B) arising absent a physician-patient relationship; and (II) whether the defendant met his burden of proving the applicable standard of care and that his supervision of the residents administering care to Mozingo conformed to the applicable standard of care.

As we have recently stated,

> [s]ummary judgment is proper where there is no genuine issue of any material fact and the movant is entitled to judgment as a matter of law. N.C.G.S. § 1A-1, Rule 56(c). '[A]n issue is genuine if it can be maintained by substantial evidence. . . . A fact is material if it would establish any material element of a claim or defense.' . . . 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' . . . 'In ruling on a motion for summary judgment the evidence is viewed in the light most favorable to the non-moving party.' . . . The movant 'has the burden of showing at least one of the three grounds justifying summary judgment in his favor: (1) "an essential element of plaintiff's claim is nonexistent . . . (2) plaintiff cannot produce evidence to support an essential element of his claim, or . . . (3) plaintiff cannot surmount an affirmative defense which would bar the claim." '

*Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 101 N.C. App. 1, 3-4, 398 S.E.2d 889, 890 (1990) (citations omitted). "The burden rests on the movant to make a conclusive showing; until then, the non-movant has no burden to produce evidence." *Virginia Elec. and Power Co. v. Tillett*, 80 N.C. App. 383, 385, 343 S.E.2d 188, 191, *cert. denied*, 317 N.C. 715, 347 S.E.2d 457 (1986). "Once the moving party meets this burden, the burden is then on the opposing party to show that a genuine issue of material fact exists. . . . If the opponent fails to forecast such evidence, then the trial court's entry of summary judgment is proper." *White v. Hunsinger*, 88 N.C. App. 382, 383, 363 S.E.2d 203, 204 (1988) (citation omitted). Summary judgment is such a drastic remedy that it should rarely be granted in negligence cases. *Southern Watch Supply Co. v.*

*Regal Chrysler-Plymouth*, 69 N.C. App. 164, 165, 316 S.E.2d 318, 319, *disc. rev. denied*, 312 N.C. 496, 322 S.E.2d 560 (1984). This is true because " '[e]ven where there is no substantial dispute as to what occurred, it *usually* remains for the jury to apply the . . . [appropriate standard of care] to the facts of the case.' " *Id.* at 166, 316 S.E.2d at 319 (citation omitted) (emphasis added).

[1] We note initially that the plaintiffs argue in their reply brief that this Court should not consider the terms of the contract between the Medical School and Eastern as testified to by the defendant because the contract was not made a part of the record on appeal and because the defendant has no knowledge of the terms of the contract. We disagree. First, the terms of the contract are a part of the record because the defendant testified to them in an affidavit which has been made a part of the record. Second, although N.C.G.S. § 1A-1, Rule 56(e) provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein," the "[f]ailure to make a timely objection to the form of affidavits supporting a motion for summary judgment is deemed a waiver of any objections. . . . Technical objections based on G.S. 1A-1, Rule 56(e) are not timely made when they are first raised on appeal." *North Carolina Nat. Bank v. Harwell*, 38 N.C. App. 190, 192, 247 S.E.2d 720, 722 (1978), *disc. rev. denied*, 296 N.C. 410, 267 S.E.2d 656 (1979) (citations omitted). *See also Whitehurst v. Corey*, 88 N.C. App. 746, 748, 364 S.E.2d 728, 729-30 (1988). The record discloses no prior objection to the defendant's affidavit on the grounds of a lack of personal knowledge or upon the possible grounds that the defendant's affidavit testimony violated the best evidence rule. Therefore, because the plaintiffs did not make a timely objection to the defendant's affidavit, they have waived any objection they may have had regarding it.

I

In a medical malpractice case, the plaintiff must prove "that defendant was negligent in his care of plaintiff and that such negligence was the proximate cause of plaintiff's injuries and damage. . . . The defendant physician's negligence must be established by showing the standard of care *owed* to plaintiff and that defendant violated that standard of care." *Beaver v. Hancock*, 72 N.C. App. 306, 311, 324 S.E.2d 294, 298 (1985) (citation omitted) (emphasis

added). *See also Wall v. Stout*, 310 N.C. 184, 199, 311 S.E.2d 571, 580 (1984). The proper standard of care is found in N.C.G.S. § 90-21.12 (1990). *See also Wall* at 192-93, 311 S.E.2d at 576-77 ("G.S. 90-21.12 did not abrogate the common law standards of care required of a physician" as set forth "most succinctly" in *Hunt v. Bradshaw*, 242 N.C. 517, 521-22, 88 S.E.2d 762, 765 (1955)).

(A)

Duty Arising From A Physician-Patient Relationship

[2]   When a physician and a patient enter into a consensual physician-patient relationship for the provision of medical services, a duty arises requiring the physician to conform to the statutory standard of care. *Galloway v. Lawrence*, 266 N.C. 245, 247, 145 S.E.2d 861, 864 (1966) (duty physician owes patient determined by contract by which physician's services are engaged); *Kennedy v. Parrott*, 243 N.C. 355, 360, 90 S.E.2d 754, 757 (1956) (when person consults physician for treatment, a "status" or "relation" is created as opposed to a contract in the ordinary sense of the term "contract"; nevertheless, the agreement between physician and patient imposes upon physician a duty of care); *Ledford v. Martin*, 87 N.C. App. 88, 91, 359 S.E.2d 505, 507 (1987), *disc. rev. denied*, 321 N.C. 473, 365 S.E.2d 1 (1988), *overruled on other grounds*, 327 N.C. 283, 300-01, 395 S.E.2d 85, 95 (1990) (when obstetrician agrees to treat pregnant woman, obstetrician owes duties to both woman and baby); *Willoughby v. Wilkins*, 65 N.C. App. 626, 631-32, 310 S.E.2d 90, 94 (1983), *disc. rev. denied*, 310 N.C. 631, 315 S.E.2d 698 (1984) (stating that a physician-patient relationship between physician and patient "must be shown before any duty of care may be imputed to" the physician, Court held that there was sufficient evidence of such relationship where physician "evaluated plaintiff's physical condition and rendered medical advice to her"); 61 Am. Jur. 2d *Physicians, Surgeons, and Other Healers* § 158 (1981) (physician-patient relation is consensual; person knowingly seeks physician's assistance and physician knowingly accepts person as patient; relation may result from express or implied contract; relation exists "between the person actually giving the treatment and the patient receiving it"); 61 Am. Jur. 2d *Physicians, Surgeons, and Other Healers* § 202 (duty of physician to patient "is predicated by the law on the relation which exists between physician and patient, which, . . . is the result of a consensual transaction, and not necessarily one of contract, and the existence of which is a

question of fact"); *see also* Annotation, *What Constitutes Physician-Patient Relationship For Malpractice Purposes*, 17 A.L.R.4th 132 (1982); *cf. Hiser v. Randolph*, 126 Ariz. 608, 610-12, 617 P.2d 774, 776-78 (Ct. App. 1980), *overruled on other grounds*, 141 Ariz. 597, 688 P.2d 605 (1984) (where physician assented to hospital's bylaws and was paid by the hospital to be an "on call" physician in charge of the hospital's emergency room, "the lack of a consensual physician-patient relationship [between the 'on call' physician and the emergency room patient] before a duty to treat can arise" was waived). Whether the defendant and Mozingo or Mozingo, Jr. established a physician-patient relationship depends upon whether the defendant actually accepted Mozingo or Mozingo, Jr. as patients and undertook to treat them. *Childers v. Frye*, 201 N.C. 42, 45, 158 S.E. 744, 746 (1931) ("ultimate test of liability would depend upon whether the physician actually accepted [a] . . . person as a patient and undertook to treat him").

The defendant's evidence shows that the defendant never accepted Mozingo or Mozingo, Jr. as patients or undertook to treat them, and therefore there was no consensual relationship between the defendant and Mozingo or Mozingo, Jr. In his affidavit, the defendant stated that "[a]t no time prior to or during the delivery of Alton Ray Mozingo, Jr., did a physician/patient relationship exist between this affiant and Alton Ray Mozingo, Jr., or either of his parents." The defendant, Mozingo, and the plaintiffs had no contact whatsoever prior to 5 December 1984. In fact, the only contact they had took place *after* any negligence was alleged to have occurred. Furthermore, this case does not present the special circumstances of *Hiser* such that the consensual relationship requirement is deemed to have been waived by the defendant. Because the defendant has shown an absence of a physician-patient relationship, the defendant has shown that an essential element of the plaintiffs' claim does not exist, thereby shifting the burden to the plaintiffs to come forward with evidence establishing the physician-patient relationship. The plaintiffs produced no additional evidence on this issue and therefore have failed to meet their burden in this regard. Accordingly, summary judgment on this issue was appropriate.

(B)

Duty Arising Absent A Physician-Patient Relationship

[3] A duty to meet the statutory standard of care may arise absent a consensual physician-patient relationship. *Cf. Olympic*

*Prod. Co. v. Roof Sys., Inc.*, 88 N.C. App. 315, 322, 363 S.E.2d 367, 371-72, *disc. rev. denied*, 321 N.C. 744, 366 S.E.2d 862 (1988) (negligence action "for failing to exercise reasonable care in inspecting the installation of" a rubber membrane roof). In *Olympic*, this Court stated that while "[a] duty of care may arise out of a contractual relationship," " '[i]t is well settled in North Carolina that privity of contract is not required in order to recover against a person who negligently performs services for another and thus injures a third party.' " *Id.* (quoting *Ingle v. Allen*, 71 N.C. App. 20, 26, 321 S.E.2d 588, 594 (1984), *disc. rev. denied*, 313 N.C. 508, 329 S.E.2d 391 (1985) ). "The duty of vigilance to prevent injury has its source in the law applicable to human relations rather than in a narrow conception of privity." 57A Am. Jur. 2d *Negligence* § 93 (1989).

"As a general proposition of the law of torts, it is settled that, under certain circumstances, one who undertakes to render services to another which he should recognize as necessary for the protection of a third person, or his property, is subject to liability to the third person, for injuries resulting from his failure to exercise reasonable care in such undertaking." *Quail Hollow East Condominium Ass'n v. Donald J. Scholz Co.*, 47 N.C. App. 518, 522, 268 S.E.2d 12, 15, *disc. rev. denied*, 301 N.C. 527, 273 S.E.2d 454 (1980) (citing Restatement (Second) of Torts § 324A (1965) ). "This duty to protect third parties from harm arises under circumstances where the party is in a position so that 'anyone of ordinary sense who thinks will at once recognize that if he does not use ordinary care and skill in his own conduct with regard to those circumstances, he will cause danger of injury to the person or property of the other.' " *Olympic*, 88 N.C. App. at 323, 363 S.E.2d at 372 (quoting *Davidson & Jones, Inc. v. County of New Hanover*, 41 N.C. App. 661, 666, 255 S.E.2d 580, 584, *disc. rev. denied*, 298 N.C. 295, 259 S.E.2d 911 (1979) ); *see also* Annotation, *Liability of Physician or Surgeon for Injury to Child in Pregnancy and Childbirth Cases*, 99 A.L.R.2d 1398, 1400-03 (1965) (physician's negligence in "[p]redelivery diagnosis and treatment" and during delivery); 61 Am. Jur. 2d *Physicians, Surgeons, and Other Healers* § 279 (physician's predelivery negligence and negligence during childbirth may render physician liable to child).

Whether the defendant has placed himself in the position where his supervision of the residents at the Hospital pursuant to his contract with Eastern may be expected to affect the interest of

patients receiving care from the residents, such that tort law will impose upon him the duty to act in such a way that the patients will not be injured by the residents, requires a balancing of various factors by the court. *Ingle*, 71 N.C. App. at 27, 321 S.E.2d at 594. This Court recognized six factors in *United Leasing Corp. v. Miller*, 45 N.C. App. 400, 263 S.E.2d 313, *disc. rev. denied*, 300 N.C. 374, 267 S.E.2d 685 (1980). They include:

> (1) the extent to which the transaction was intended to affect the other person; (2) the foreseeability of harm to him; (3) the degree of certainty that he suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury; (5) the moral blame attached to such conduct; and (6) the policy of preventing future harm.

*Id.* at 406-07, 263 S.E.2d at 318. Another factor in the nonexclusive list of factors is the "extent of burden to defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach . . . ." W. Prosser & W. Keeton, The Law of Torts § 53 at 359 n. 24 (5th ed. 1984); *see also* 57A Am. Jur. 2d *Negligence* § 87 (other factors). Additionally, a duty of care on physicians like the defendant must be consistent with the purpose and spirit of N.C.G.S. §§ 90-21.11 to -21.14 (1990), the medical malpractice act, which is "to decrease the number and severity of medical malpractice claims in an effort to decrease the cost of medical malpractice insurance." *Black v. Littlejohn*, 312 N.C. 626, 633, 325 S.E.2d 469, 475 (1985).

When there is no dispute as to the facts or when only a single inference can be drawn from the evidence, the issue of whether a duty exists is a question of law for the court. *Pinnix v. Toomey*, 242 N.C. 358, 362, 87 S.E.2d 893, 897 (1955) (duty may arise by statute or by operation of law); Restatement (Second) of Torts § 328B(b) (1965) (in negligence action the court must determine whether the facts "give rise to any legal duty"); 57A Am. Jur. 2d *Negligence* § 86 (question of duty is "an issue of law for the court rather than for the jury"). However, when the facts are in dispute or when more than a single inference can be drawn from the evidence, the issue of whether a duty exists is a mixed question of law and fact. The issues of fact must first be resolved by the fact finder, and then whether such facts as found by the fact finder give rise to any legal duty must be resolved by the court. *See* Restatement (Second) of Torts § 328B(b) comment e.

As the facts regarding the issue of duty are not in dispute at this point in the litigation, we conclude from the evidence presented to the trial court with regard to the defendant's motion for summary judgment that the defendant failed to prove that he did not owe a duty of care to Mozingo, Jr. The defendant was responsible on 5 December 1984 for the supervision of the residents at the Hospital. He had undertaken a responsibility as an employee of Eastern to render supervisory medical services to the Medical School's residency program and thereby to the residents training under it and, at least indirectly, to the patients under the residents' care. These residents, though licensed physicians, were still undergoing training in obstetrics, and therefore the Medical School provided these residents with experienced supervision for difficult or problematic cases. Such supervision was thus necessary for the protection of patients, like Mozingo and Mozingo, Jr., receiving care under the Medical School's residency program. On the facts as presented to the trial court, the defendant was in such a position that if a person of "ordinary sense" were to think about the circumstances, the person would at once recognize that if the defendant were to fail to use the amount of care required of him for the proper supervision of the residents, he would cause danger of injury to the patients under the care of the residents. Finally, although the imposition of a duty upon physicians such as the defendant *may* have negative consequences for the community, such as increased medical costs, we are not convinced that these potential consequences outweigh the policy of preventing harm to patients like Mozingo and Mozingo, Jr. arising from the supervision of residents by physicians like the defendant. Because the defendant failed to prove on the evidence presented to the trial court that he did not owe a duty of care to Mozingo, Jr., summary judgment was not appropriate on this issue.

## II

[4] The second issue concerns the appropriate standard of care owed, if any, to Mozingo, Jr. by the defendant. In support of his summary judgment motion, the defendant submitted his own affidavit and deposition transcript, and the affidavits of three physicians, Doctors Frank C. Greiss, Robert C. Cefalo, and Charles Hammond. The defendant argues that the affidavits demonstrate the applicable standard of care owed to Mozingo, Jr. and that the defendant did not breach that standard.

When ruling on a motion for summary judgment, a court must "carefully scrutinize" the movant's papers and "resolve all inferences against him." *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985). For the defendant to prove that essential elements of the plaintiffs' claim do not exist, namely, the standard of care owed to Mozingo, Jr. and its breach, the defendant's affidavits must conclusively show the standard of care and that the defendant did not breach it. To prove this by affidavit, in addition to the requirements of N.C.G.S. § 1A-1, Rule 56(e), an affiant must aver that he is familiar "with the standards of practice among members of the same health care profession with similar training and experience [to that of the defendant] situated in the same or similar communities at the time of the alleged act giving rise to the cause of action," and that the "defendant acted in accordance with those standards . . . ." *See Hunsinger*, 88 N.C. App. at 383-84, 363 S.E.2d at 204 (affiants in support of defendant's motion "averred that they were familiar with the standards of practice" and that defendant acted accordingly); N.C.G.S. § 90-21.12; *see also Wall*, 310 N.C. at 192-93, 311 S.E.2d at 576-77 (applicable standard of care which fully explains "[t]he scope of a physician's duty to his patient" combines "in *one test* the exercise of 'best judgment,' 'reasonable care and diligence' *and* compliance with the 'standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities'") (emphases in text).

Here, the defendant has not met his burden. Dr. Greiss averred that he was familiar with "the protocol of Bowman Gray School of Medicine in December of 1984 which applied to the supervision of interns and residents in obstetrics at the Bowman Gray School of Medicine . . . ." Dr. Cefalo averred that he was familiar with "the protocol of The North Carolina Memorial Hospital in December of 1984 which applied to the supervision of interns and residents in obstetrics at The North Carolina Memorial Hospital . . . ." Dr. Hammond averred that he was familiar with "the protocol of Duke University Medical Center in December of 1984 which applied to the supervision of interns and residents in obstetrics at Duke University Medical University. . . ." The defendant's affidavit set forth the protocol of the Medical School and Hospital in Pitt County, North Carolina. However, neither the defendant nor the doctors averred that they were familiar with the standards of practice among members of the same health care profession

MOZINGO v. PITT COUNTY MEMORIAL HOSPITAL

[101 N.C. App. 578 (1991)]

with similar training and experience to that of the defendant situated in Pitt County or a similar community at the time of the alleged negligence giving rise to this suit. Furthermore, while the defendant averred that he acted according to his contractual duty with Eastern, none of the affiants averred that the defendant acted in accordance with the appropriate standard of care. *See* Annotation, *Validity and Construction of Contract Exempting Hospital or Doctor from Liability for Negligence to Patient*, 6 A.L.R.3d 704, 705 (1966) (as a general rule, physicians "may not contract against the effect of their own negligence"). Therefore, because the defendant failed to meet his burden with regard to his motion for summary judgment, genuine issues of material fact exist as to the appropriate standard of care and as to whether the defendant acted in accordance with that standard. Accordingly, the trial court's entry of summary judgment for the defendant is

Reversed and remanded.

Judge PHILLIPS concurs.

Judge ORR dissents.

Judge ORR dissenting.

I respectfully dissent solely on the grounds that my review of the evidence before this Court indicates that defendant did not owe Mozingo, Jr. a duty of care in the absence of a physician-patient relationship. Without establishing a duty of care, there can be no negligence, and therefore, summary judgment in defendant's favor was proper.

While the majority's recitation of the law on this issue is correct, I do not agree that "defendant failed to prove that he did not owe a duty of care to Mozingo, Jr." I find that defendant provided sufficient evidence that he did not owe such duty to Mozingo, Jr., and further find that Mozingo, Jr. did nothing to rebut defendant's evidence on this issue.

The determination of any question of duty — that is, whether the defendant stands in such a relation to the plaintiff that the law will impose upon him an obligation of reasonable conduct for the benefit of the plaintiff — has been held to be an issue of law for the court rather than for the jury, to be

determined by reference to the body of statutes, rules, principles, and precedents which make up the law. . . . the evidence and scope or range of the duty . . . . [O]nce a duty has been found to exist, the question of whether the duty was properly performed is ordinarily a question to be decided by the trier of fact, . . . .

57A Am. Jur. 2d *Negligence* § 86.

The undisputed evidence of record regarding defendant's alleged duty establishes that defendant, as an employee of Eastern, met all of his contractual obligations to provide supervision to the Medical School's residency program. Defendant began his "on call" supervision duties pursuant to the contract at 5:00 p.m. on 5 December 1984. He remained at home (as he was permitted to do under the contract) with an open telephone line. Immediately upon receiving the request for assistance from Dr. Melinda Warren, defendant went to the hospital to assist the resident physicians in Mozingo, Jr.'s delivery. By the time he arrived, the baby had been delivered.

Dr. William Dillon, M.D., an expert physician, testifying for plaintiff, stated in his deposition that "it was incumbent upon the chief resident to inform the staff physician of the presence of this patient." Dr. Dillon was speaking in terms of informing the staff physician (defendant) at the time the patient was admitted to the hospital. It is undisputed that the patient was admitted to the hospital before 5:00 p.m., but that defendant was not notified of such until he received the call at his home later in the evening.

Dr. Dillon later contradicted himself on this point when he stated:

> Therefore, I think in at least a minimum sense a supervising physician needs to make contact sometimes, preferably at the beginning [of his on call service], and maybe a few times in between, as to what is occurring on his service.

Dr. Dillon testified as to his opinion on what the supervising physician should do. However, the defendant was not required by the contract under which he worked nor was the accepted practice at *all* of the teaching hospitals in North Carolina any different from what he in fact did. We find no evidence that defendant in any way breached his contract for providing on call services on 5 December 1984, or acted or failed to act in a manner which would establish a duty of care under the facts of this case. While

defendant could have called the residents on duty at the hospital at the beginning of his on call service, he was under no obligation to do so, pursuant to the contract or otherwise, and as such no duty existed as a matter of law to the plaintiff Mozingo, Jr.

I therefore dissent, and would hold that the trial court did not err in granting summary judgment in defendants' favor.