**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-1158

LYNNE E. KRITTER, as Executor of the Estate of Eugene John Kritter, III; KRITTER CROPDUSTING, INC.,

Plaintiffs - Appellants,

v.

BRENT MOORING, as Administrator CTA of the Estate of Murry Rayborn Daw; DAW FARMS, INC.; NUTRIEN AG SOLUTIONS, INC.; WILLIAM JORDAN ELMORE,

Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Richard E. Myers, II, Chief District Judge.  (5:22-cv-00243-M-BM)

Argued:  October 29, 2024                    Decided:  May 19, 2025

Before AGEE, RICHARDSON and BERNER, Circuit Judges.

Vacated and remanded by published opinion.  Judge Berner wrote the opinion, in which Judge Agee and Judge Richardson joined.

**ARGUED:**  John Chilson, COMERFORD CHILSON & MOSER, LLP, Winston-Salem, North Carolina, for Appellants.  Walter E. Brock, Jr., YOUNG MOORE & HENDERSON, PA, Raleigh, North Carolina; Benjamin James Hogan, BRYAN CAVE LLP, Denver, Colorado, for Appellees.  **ON BRIEF:**  W. Thompson Comerford, Jr., COMERFORD CHILSON & MOSER LLP, Winston-Salem, North Carolina, for Appellants.  Paul J. Lopach, BRYAN CAVE LLP, Denver, Colorado; Christopher M. Kelly, GALLIVAN,

WHITE & BOYD, PA, Charlotte, North Carolina, for Appellees Nutrien AG Solutions, Inc. and William Jordan Elmore.  David W. Earley, YOUNG MOORE & HENDERSON PA, Raleigh, North Carolina; Donald E. Clark, Jr., DONALD E. CLARK, JR., ATTORNEY AT LAW, PLLC, Goldsboro, North Carolina, for Appellee Daw Farms, Inc. Jay C. Salsman, HARRIS, CREECH, WARD & BLACKERBY, New Bern, North Carolina; Angela R. Sheets, HUFF POWELL & BAILEY, PLLC, Raleigh, North Carolina, for Appellee Brent Mooring.

BERNER, Circuit Judge:

Eugene Kritter was an experienced helicopter pilot who owned and operated a crop dusting company, Kritter Cropdusting. While crop dusting over a farm in North Carolina, his helicopter collided with a low-hanging steel wire. Kritter was killed in the resulting crash. Kritter Cropdusting and Kritter's estate brought this negligence case against the owners and operators of the farm and Nutrien, the pesticide company that retained Kritter Cropdusting to carry out the job. The district court granted summary judgment to the defendants.

Under North Carolina law, summary judgment is appropriate "only in *exceptional* negligence cases . . . [because] the standard of reasonable care should ordinarily be applied by the jury under appropriate instructions from the court." *Ragland v. Moore*, 261 S.E.2d 666, 668 (N.C. 1980) (emphasis added). This is not an exceptional case. Rather, this is a case in which liability depends on disputed facts and the competing reasonable inferences that could be drawn from those facts. That is the province of the jury, not the court. Accordingly, we vacate the order of the district court and remand for further proceedings.

## I. Background

Murry Rayborn Daw (Rayborn) owned a parcel of land in Wayne County, North Carolina, where he farmed and hunted. In one of his fields, Rayborn erected a deer stand, a raised platform that provides an elevated vantage point for hunting deer. The deer stand was affixed to a tall pole, which stood approximately 30 feet high. To attract doves for

3

hunting, Rayborn strung a steel wire, about a quarter of an inch in diameter, from atop the deer stand pole to a tree nearly 300 feet away.

After he ceased farming the land himself, Rayborn leased his parcel to Daw Farms, Inc., a farming company owned and operated by his relatives, Paul and Delanor Daw. Although Rayborn allowed Daw Farms to farm on his land, he maintained the right to access the land for hunting.

Daw Farms had long battled stinkbug infestations. For several years, Daw Farms hired a local pilot to crop dust its fields with pesticides. In 2019, Daw Farms engaged Nutrien Ag Solutions, Inc. (Nutrien) to take over this work. Nutrien employed a local farmer, Jordan Elmore, as a crop consultant to work with Daw Farms and to hire pilots to crop dust on Nutrien's behalf.

In June 2019, Elmore arranged for two helicopter pilots to crop dust over Daw Farms. When one of the pilots reached Rayborn's parcel, he conducted an aerial survey before spraying. The pilot identified no visible hazards. He then descended and began spraying Rayborn's parcel. Flying low above the parcel, the pilot caught sight of the dove wire. Just before colliding with the wire, the pilot quickly pulled the helicopter upward and "hopped over" the wire. J.A. 2241. The pilot described spotting the wire as "pure luck [. . .] just the way the sun was shining." J.A. 2241. In the moment, he told the other pilot "that one about got me," but he never told anyone else about his near-miss with the wire. J.A 2248–49.

The following year, in 2020, Daw Farms once again hired Nutrien to apply pesticides on its fields. Elmore made the arrangements and, this time, hired Kritter

4

Cropdusting. Kritter was an experienced agricultural pilot with over 19,000 hours of flight time on his record.

The day before the planned crop dusting operation at Daw Farms, Kritter sent a ground crew to meet with Elmore to identify landing zones. Elmore offered to drive the ground crew around to show them which fields should be crop dusted, but they declined. Instead, they told Elmore that Kritter would have him identify the locations to be sprayed by placing virtual pins on a digital map on his iPad. The ground crew never inquired about potential hazards and Elmore volunteered no such information.

The following morning, Kritter and Elmore met. As expected, Kritter asked Elmore to identify the fields to be sprayed by placing virtual pins on map on his iPad. Kritter then commenced the crop dusting operation in his helicopter. Late that afternoon, Kritter reached Rayborn's parcel. Shortly before spraying the parcel, Kritter called Elmore while he was on the ground refueling and refilling the helicopter's pesticide tanks. During the call, Kritter asked Elmore whether there was anything he "need[ed] to be aware of on this farm." J.A. 696. Elmore did not mention the dove wire. Elmore responded only that there was a housing development nearby.

Kritter first made two aerial passes to survey Rayborn's parcel. He then descended to begin crop dusting. As Kritter flew over the parcel, his helicopter collided with the dove wire. The wire wrapped around the main rotor and blades of the helicopter, causing it to crash and killing Kritter.

5

## II. Procedural History

Kritter's estate and Kritter Cropdusting sued Rayborn,[1] Daw Farms, Elmore, and Nutrien (who we refer to collectively as "Appellees") for tortious negligence under North Carolina state law. After the close of discovery, the parties filed cross-motions for summary judgment. The district court granted Appellees' motion for summary judgment, concluding that defendants Rayborn and Daw Farms, the owner and lessee of Rayborn's land, owed no duty of care to remove or modify the dove wire or to warn Kritter of its existence. The district court reasoned that the risk posed by the dove wire to a pilot was not reasonably foreseeable to them because they were farmers, not pilots. It also concluded that neither Nutrien nor Elmore owed Kritter a duty of care under any theory of liability. *Kitter v. Mooring*, 712 F. Supp. 3d 684, 703–06 (E.D.N.C. 2024).

In response to Appellees' affirmative defenses, the district court rejected the argument that Kritter was contributorily negligent for ignoring an obvious risk, finding that the dove wire was not an "open and obvious condition." *Id.* at 700. The district court noted that the wire was difficult to spot, particularly from a helicopter. *Id.* Finally, the district court rejected Appellees' argument that they should be shielded from liability for Kritter's death under North Carolina's incident to the work undertaken exception. *Id.* at 701–02. This exception shields Appellees from liability when an independent contractor exercises sufficient control and possession over a property. *Id.*

---

[1] Rayborn died during the pendency of this litigation and his estate is now represented by his son, Brent Mooring. We refer to the estate as "Rayborn" for ease of understanding.

6

Having granted Appellees' motion for summary judgment, the district court denied Kritter's cross motion for partial summary judgment. *Id.* at 706–07. Kritter timely appealed. He asks that we vacate the district court's grant of summary judgment for Appellees and grant partial summary judgment in his favor.

## III. Standard of Review

We review "*de novo* a district court's decision to grant summary judgment, applying the same legal standards as the district court and viewing the facts and reasonable inferences in the light most favorable to the nonmoving party." *English v. Clarke*, 90 F.4th 636, 645 (4th Cir. 2024) (internal quotation omitted). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a).

## IV. Analysis

When sitting in diversity jurisdiction, we apply the law of the forum state. *Moore v. Equitrans, L.P.*, 27 F.4th 211, 220 (4th Cir. 2022). North Carolina's courts have repeatedly held that "issues of negligence are not ordinarily susceptible to summary disposition." *Cone v. Watson*, 736 S.E.2d 210, 212 (N.C. Ct. App. 2012) (internal quotation omitted); *see also Mozingo by Thomas v. Pitt Cnty. Mem'l Hosp., Inc.*, 400 S.E.2d 747, 750 (N.C. Ct. App. 1991), *aff'd*, 415 S.E.2d 341 (N.C. 1992) ("Summary judgment is such a drastic remedy that it should rarely be granted in negligence cases."). "[E]ven where there is no

7

substantial dispute as to what occurred, it usually remains for the jury to apply the appropriate standard of care to the facts of the case." *Mozingo*, 400 S.E.2d at 750 (internal quotation omitted). That is true because either "when the facts are in dispute or when more than a single inference can be drawn from the evidence" those issues of fact must first be resolved by a jury. *Id.* at 753.

Under North Carolina law, a common law claim of negligence has three elements: (1) a legal duty owed by the defendant to the plaintiff; (2) a breach of that legal duty; and (3) injury proximately caused by the breach. *Keith v. Health-Pro Home Care Servs., Inc.*, 873 S.E.2d 567, 574 (N.C. 2022). This appeal turns on the first element: whether Appellees owed Kritter a legal duty of care. Appellees argue that they owed no such duty. Even if they did, however, Appellees argue that summary judgment was still appropriate for two independent reasons: because Kritter was contributorily negligent and because his death was incident to his work as an independent contractor.

For the reasons discussed below, we conclude material questions of fact remain as to whether each of the Appellees owed Kritter a legal duty of care. The issue of whether such duty exists must, under North Carolina law, be left for a jury to resolve. *Mozingo*, 400 S.E.2d at 753. Similarly, whether Kritter was contributorily negligent in causing the accident turns on factual determinations that cannot be resolved at summary judgment. Appellees' argument that Kritter's death was incident to his work is unsupported by North Carolina law and must be rejected.

A. Premises Liability

Kritter claims that Rayborn and Daw Farms owed him a legal duty of care under North Carolina's doctrine of premises liability. Under this doctrine, landowners have a "nondelegable duty to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors." *Asher v. Huneycutt*, 876 S.E.2d 660, 667 (N.C. Ct. App. 2022) (internal quotation omitted). This duty of reasonable care "requires that the landowner not unnecessarily expose a lawful visitor to danger and give warning of hidden hazards of which the landowner has express or implied knowledge." *Shepard v. Catawba Coll.*, 838 S.E.2d 478, 486 (N.C. Ct. App. 2020). Landowners must "take reasonable precautions to ascertain the condition of the property and to either make it reasonably safe or give warnings as may be reasonably necessary to inform the [lawful visitor] of any foreseeable danger." *Martishius v. Carolco Studios, Inc.*, 542 S.E.2d 303, 308 (N.C. Ct. App. 2001) (alteration in original) (internal quotation omitted), *aff'd*, 562 S.E.2d 887 (N.C. 2002) (internal quotation and citation omitted). An independent contractor or subcontractor who enters premises at the request of an owner or occupier is considered a lawful visitor who is owed a duty of reasonable care. *McCorkle v. N. Point Chrysler Jeep, Inc.*, 703 S.E.2d 750, 752 (N.C. Ct. App. 2010).

There is no dispute that Kritter lawfully entered onto Rayborn's parcel. Nutrien hired Kritter pursuant to its agreement with Daw Farms and invited Kritter onto Rayborn's parcel. The standard duty of care under premises liability thus required Rayborn and Daw Farms—as owner and lessee of that land, respectively—to take reasonable precautions, ascertain the condition of the property, and either make the property reasonably safe or

9

give warnings as may be reasonably necessary to inform Nutrien or Kritter of any foreseeable danger. *See Martishius*, 542 S.E.2d at 308; *Roumillat v. Simplistic Enters., Inc.*, 414 S.E.2d 339, 342–43 (N.C. 1992).

At the heart of the premises liability determination lies the question of whether the danger was foreseeable. Rayborn and Daw Farms contend that as farmers, not helicopter pilots, they could not reasonably have foreseen the hazard that a dove wire would pose to Kritter in flying his helicopter above their property. Accordingly, they argue they had no legal duty to make the property safe or to warn Kritter about the wire. The district court accepted this argument. Under North Carolina negligence law, however, the issue of foreseeability turns on the particular facts of each case and is generally a question left for the jury. *Stein v. Asheville City Bd. of Educ.*, 626 S.E.2d 263, 267–68 (N.C. 2006); *Fussell v. N.C. Farm Bureau Mut. Ins.*, 695 S.E.2d 437, 440 (N.C. 2010). That proves true in this case as well. Rayborn and Daw Farms need not have been able to foresee the "exact form" of Kritter's injury to have had a duty of care. *Foster v. Winston-Salem Joint Venture*, 281 S.E.2d 36, 40 (N.C. 1981). At summary judgment, it was sufficient for Kritter to put forward evidence sufficient for a reasonable jury to find that, upon exercising reasonable care, Rayborn and Daw Farms "should have foreseen that some injury would result." *Id.*

Viewing the facts in the light most favorable to Kritter, a jury could reasonably conclude that Rayborn and Daw Farms should have foreseen the danger posed by the dove wire. Both Rayborn and the owners of Daw Farms, Paul and Delanor Daw, were aware of the dove wire. They were also generally familiar with aerial crop dusting practices. Paul and Delanor Daw had previously hired other pilots to crop dust their fields and personally

10

observed the low altitudes at which they fly. Indeed, Delanor testified that he was aware Kritter would fly low over Rayborn's parcel and that he had once observed a crop duster fly so low that it "had beans on [its] wheels." J.A. 900. Although Rayborn passed away before he could be deposed in connection with this matter, a jury could reasonably infer that he, like Paul and Delanor Daw, would have been aware that pilots fly low over fields when crop dusting. Rayborn had also hired crop dusters on many occasions. Because Rayborn and Daw Farms were aware of the dove wire and knew that pilots fly low over fields when crop dusting, a jury could reasonably conclude that Rayborn and Daw Farms should have foreseen the danger the dove wire posed to Kritter.

On the other hand, the facts before us do not establish that the danger posed by the dove wire was foreseeable as a matter of law. A fair-minded jury could reasonably conclude that it was not. For this reason, we find that summary judgment is equally inappropriate for Kritter. Where, as here, either the facts are in dispute or more than one inference can be drawn from the evidence, these issues of fact must first be resolved by the jury. *Mozingo*, 400 S.E.2d at 753. Here, a jury must decide the issue of foreseeability, as is the ordinary course in negligence actions arising under North Carolina law.

As a final note on premises liability, Rayborn argues separately that he had no legal duty to Kritter because he had leased his parcel to Daw Farms. North Carolina law provides that where a landowner retains partial control over a leased property, the landowner remains liable for injuries to third parties if the injury is caused by conditions under the landowner's control. *Franklin Drug Stores, Inc. v. Gur–Sil Corp.,* 152 S.E.2d 77, 79 (N.C. 1967). Under such circumstances, control over specific conditions on property can be

11

shared by landlord and tenant. *Holcomb v. Colonial Assocs., L.L.C.*, 597 S.E.2d 710, 715 (N.C. 2004). At least for summary judgment purposes, it is sufficient that a reasonable jury could conclude that Rayborn would owe a legal duty to Kritter for conditions on the parcel over which he retained control, including the dove wire. *Id.*

The extent of Rayborn's continued control over the parcel remains unclear. Though Rayborn claims that he relinquished control over the parcel, Paul Daw testified that Rayborn retained access to his parcel to hunt, including use of the dove wire and deer stand. Paul Daw further testified that Daw Farms did not have permission to remove the dove wire from the field. Because material issues of fact remain regarding the extent to which Rayborn maintained control over the parcel and dove wire, this question must be left for a jury.

### B. Undertaking Liability

We next consider whether Nutrien and Elmore owed Kritter a duty of care. Nutrien concedes that Elmore was acting within the scope of his employment with Nutrien at all relevant times. Nutrien is therefore vicariously liable for Elmore's actions under the doctrine of *respondeat superior*. *Gordon v. Garner,* 493 S.E.2d 58, 63 (N.C. Ct. App. 1997). We thus turn to the question of whether Elmore owed Kritter a duty of care to warn him about the dove wire.

North Carolina's doctrine of "undertaking liability" provides that a person owes a duty to "exercise that degree of care for the safety of others that a reasonable prudent person would exercise under the same circumstances." *Bogle v. Duke Power Co.*, 219 S.E.2d 308, 310 (N.C. Ct. App. 1975). For an undertaking arising out of a contractual relationship, there

12

is an obligation to exercise reasonable care as would be expected within the scope of the act agreed to be done. *Pinnix v. Toomey*, 87 S.E.2d 893, 897–98 (N.C. 1955); *Council v. Dickerson's, Inc.*, 64 S.E.2d 551, 553 (N.C. 1951).

Here, Elmore worked for Nutrien as a crop consultant. He hired Kritter to crop dust Daw Farms's fields. In carrying out this task, Elmore was under an obligation to exercise the "ability, skill, and care customarily used" by crop consultants when engaging a pilot to crop dust fields. *See Quail Hollow E. Condo Ass'n v. Donald J. Scholz Co.*, 268 S.E.2d 12, 16 (N.C. Ct. App. 1980) (holding that an architect "in the performance of his contract with his employer, is required to exercise the ability, skill, and care customarily used by architects upon such projects." (internal quotation omitted)). Kritter claims that industry standard and custom required Elmore to warn him of the dove wire because such a warning fell within the scope of the "undertaking." *See Firemen's Mut. Ins. v. High Point Sprinkler Co.*, 146 S.E.2d 53, 59 (N.C. 1966).

In support of his claim that Elmore had a duty to warn about the dove wire, Kritter points to the testimony of Rod Thomas, a pilot and crop dusting expert. Thomas testified that Kritter reasonably relied on Elmore to warn him about hidden hazards and that such reliance conformed with industry standards. Thomas further testified that Kritter's "lengthy, preflight briefing with Jordan Elmore" was consistent with how a reasonable and experienced agricultural pilot would identify hazards. J.A. 2375. According to Thomas, the industry norm for crop consultants like Elmore is to be aware of and caution about known aerial application hazards. Indeed, the record before us reflects that, just before he took off to spray Rayborn's parcel, Kritter specifically asked Elmore whether there was anything

13

he "need[ed] to be aware of." J.A. 696. Kritter's crew understood this question to relate to potential hazards on Rayborn's parcel.  Notably, Elmore warned Kritter of at least one potential aerial application hazard, the presence of a nearby housing development. A question of fact remains as to whether Kritter reasonably relied on Elmore's silence about the dove wire to mean there were no other known hazards. *See Jones v. Douglas Aircraft Co.*, 112 S.E.2d 257, 260 (N.C. 1960).

Nutrien and Elmore argue that they had never in the past warned pilots about potential flight hazards. They claim their role is limited to scheduling crop dusting operations and identifying fields to be sprayed. Simply because no injury occurred previously does not necessarily absolve Nutrien and Elmore of liability here. A previously neglected duty—if one existed—cannot insulate a potential tortfeasor from liability. A jury could reasonably conclude that Elmore had a legal duty to warn Kritter of reasonably foreseeable hazards.

We also conclude that a question of fact remains as to whether the risk posed by the dove wire was reasonably foreseeable to Elmore. Elmore was himself a farmer in addition to his role as a crop consultant for Nutrien. He often visited local farms to sell chemicals and determine pesticide application needs. Elmore testified that he had observed crop dusters his "whole life," and generally understood how they operate. J.A. 1161. He thus would have been aware from experience and observation that Kritter would fly his helicopter low, just above the tops of the crops. The altitude of Kritter's spray operation would have been readily apparent to Elmore on the day of the accident because he personally observed Kritter applying chemicals to his own fields.

14

Elmore's testimony also makes clear that he knew about the dove wire. While working in a field adjacent to Rayborn's parcel, Elmore previously observed the pole, deer stand, and dove wire. Because he was aware of the dove wire and that Kritter would be flying low to the ground over Rayborn's parcel, a jury could reasonably infer that Elmore should have foreseen the danger that the dove wire would pose to Kritter while crop dusting.

## C. Appellees' Defenses

Appellees raise two additional defenses to liability. First, they argue that Kritter was contributorily negligent as a matter of law in causing the crash because the dove wire was an open and obvious hazard. Second, they argue that Kritter's injury was incident to his work, such that the injury would be subject to North Carolina's "incident to the work undertaken" exception for tort liability. We reject both contentions.

### 1. Contributory Negligence

We begin with Appellees' argument that Kritter was contributorily negligent in causing the crash. Appellees contend that the dove wire presented an open and obvious risk, and thus Kritter was contributorily negligent for failing to avoid it. North Carolina's law of contributory negligence provides that when "uncontroverted facts viewed from an objective standpoint establish that the plaintiff encountered an open and obvious risk, it is appropriate for courts to find as a matter of law that the defendant had no duty to warn the plaintiff or that the plaintiff's claim is barred by contributory negligence." *Draughon v. Evening Star Holiness Church of Dunn*, 843 S.E.2d 72, 76 (N.C. 2020). Reasonable people are assumed, absent a diversion or distraction, to be vigilant in the avoidance of injury

15

when faced with a known and obvious danger. *Roumillat*, 414 S.E.2d at 344. Like negligence generally, "contributory negligence is ordinarily a question for the jury; such an issue is rarely appropriate for summary judgment, and only where the evidence establishes a plaintiff's negligence so clearly that no other reasonable conclusion may be reached." *Cone*, 736 S.E.2d at 213.

We cannot conclude as a matter of law that the dove wire posed an open and obvious risk. Two pieces of evidence in particular point against such a conclusion. First, as noted above, Elmore arranged to have two helicopter pilots crop dust on Daw Farms's land, including on Rayborn's parcel, in June 2019. Like Kritter, one of the pilots conducted an initial aerial survey over Rayborn's parcel and did not observe the dove wire from the air. After seeing no visible hazards, that pilot descended and began spraying. While spraying Rayborn's parcel, that pilot caught sight of the dove wire just before flying into it, and pulled up just in time, narrowly avoiding the wire. The pilot described his spotting the dove wire as "pure luck." J.A. 2241.

Second, Kritter's experts reconstructed the accident using a drone and camera. Their reconstruction showed that, given the helicopter's speed, Kritter could not have seen the roughly quarter inch diameter wire with "enough time to begin maneuvering the craft before he reached the cable's location." J.A. 2341–42. This expert evidence establishes, at a minimum, that a factual dispute exists as to whether Kritter could have seen the dove wire while operating the helicopter and thus whether he could be found contributorily negligent.

16

Based on the facts before the district court, a reasonable jury could well conclude that Kritter was contributorily negligent. Indeed, Kritter was aware of the deer stand pole, and a jury could reasonably infer that the presence of the dove wire would have been obvious. That is a factual determination, however. The district court thus correctly rejected summary judgment on the question of whether Kritter was contributorily negligent.

### 2. Incident to the Work Undertaken Exception

Finally, Appellees contend that Kritter's negligence claim fails because the crash resulted from a danger that was incident to work Kritter had undertaken as an independent contractor. This argument misapprehends North Carolina law. In North Carolina, an owner or occupier of land who relinquishes control and possession of property to an independent contractor also relinquishes the duty of care to the independent contractor who is exercising control and possession, but only with respect to "dangers which may be incident to the work undertaken by the independent contractor." *McCorkle*, 703 S.E.2d at 753. That is not what happened here.

Kritter neither possessed nor controlled any part of Rayborn's parcel while he was crop dusting. *Cf. Cook v. Morrison*, 413 S.E.2d 922, 926 (N.C. Ct. App. 1992). Moreover, Kritter played no role in hanging the dove wire. Therefore, the dove wire was in no way "incident to" Kritter's work as a crop duster. The district court properly rejected this argument.

17

## V. Conclusion

Because material facts remain in dispute and reasonable inferences could be drawn that would establish negligence, we vacate the district court's grant of summary judgment and remand for further proceedings.

*VACATED AND REMANDED*